IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NTJK, INC.,

      Plaintiff,

v.

AMAZON.COM, INC., AMAZON.COM
SERVICES LLC, and AMAZON WEB
SERVICES, INC.,

      Defendants.

Civil Action No. 24-1043-RGA

## MEMORANDUM OPINION

Karen E. Keller, Andrew E. Russell, SHAW KELLER LLP, Wilmington, DE; Gerald B. Hrycyszyn, WOLF, GREENFIELD & SACKS, P.C., Boston, MA; Tonia A. Sayour, WOLF, GREENFIELD & SACKS, P.C., New York, NY,

      Attorneys for Plaintiff.

Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Brian C. Nash, MORRISON & FOERSTER LLP, Austin, TX,

      Attorneys for Defendants.

July 8, 2025

1

*[signature: Richard G. Andrews]*

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendants' motion to dismiss Plaintiff's complaint. (D.I. 12). I have reviewed the parties' briefing. (D.I. 13, 18, 19). For the reasons set forth below, Defendants' motion is GRANTED.

## I. BACKGROUND

Plaintiff NTJK, Inc. is the owner of U.S. Patent No. RE45,088 (the "'088 patent"), the only patent asserted in this case. (D.I. 1 ¶¶ 2–3). The '088 patent is a reissue of U.S. Patent No. 6,993,783. (*Id.* ¶ 15). The '088 patent has a priority date of September 7, 2000, and was issued on August 19, 2014. (*Id.*).

The '088 patent is generally directed to "[a] system for searching TV program data via the Internet" which allows "user[s] to search for specific TV program data." ('088 patent at Abstract). The '088 patent identifies (and purports to solve) two issues in the prior art. First, advertisements about upcoming TV shows did not reach all potentially interested viewers "due to the varied lifestyles of viewers and the limitations of broadcasting times." (*Id.* at 1:23–31). Second, "interest of viewers for programs to be broadcast in the future" was not available because "viewer percentages for TV programs are obtained for periods during and at the end of a broadcast." (*Id.* at 36–40). The '088 patent purports to solve these issues by providing "a system for searching TV program data, which system manages TV program data received from broadcasting stations via the Internet and provides users with the TV program data and tabulated data on searches that viewers have performed on the TV program data." (*Id.* at 1:44–49). In other words, as put by Plaintiff, the claimed invention is "a technique that uses the number of prior searches for the same TV program to gauge viewers['] interests in future programs." (D.I. 18 at 1).

Plaintiff sued Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. (D.I. 1). Plaintiff alleges Defendants' Amazon Prime Video service and other devices and services connected to Prime Video infringe the '088 patent. (*Id.* ¶¶ 22–25). Defendants move to dismiss the complaint, arguing that the '088 patent claims are invalid because they fail to recite patent-eligible subject matter under 35 U.S.C. § 101. (D.I. 12).

## II.   LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). The § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect "the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012) (internal citation omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in its earlier case *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The framework is a two-step process. *Id.*

I must first determine whether the claims are directed to a patent-ineligible concept. *Id.* If the claims are directed to a patent-ineligible concept, then I proceed to step two. *Id.* If the claims are not directed to a patent-ineligible concept, then the inquiry ends and the claims are not ineligible under § 101. *Id.* For software-implemented inventions, the first step "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (cleaned up). Asserted improvements in computer technology do not automatically fail this step. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). If the "focus of the claims is on the specific asserted improvement in computer capabilities," rather than "an 'abstract idea' for which computers are invoked merely as a tool," then the claims are patent eligible under step one. *Id.* at 1335–36. I must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

If the claims fail step one, then I must proceed to step two and look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). To be patent-eligible, "[a] claim that recites an abstract idea

must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Id.* at 222 (cleaned up). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

### III. DISCUSSION

#### A. Representative Claim

The parties dispute whether claim 6 of the '088 patent is representative for determining patent eligibility under § 101. (D.I. 13 at 14; D.I. 18 at 13–14). I find that it is.

Claim 6 recites:

6. A system for searching TV program data via the Internet for managing TV program data supplied by broadcasting stations via the Internet and providing TV program data and tabulated data based on the results by searching the TV program data by a user, the system comprising:

broadcasting station terminals provided for broadcasting stations supplying the TV program data;

user terminals for receiving the TV program data;

and a data management apparatus connected to the broadcasting station terminals and user terminals via the Internet;

the data management apparatus comprising:

> a communication connection controller connected to the Internet via a firewall;
>
> a database;
>
> a web server that receives via the Internet search requirements from the user terminals and transmits via the Internet results of searching the database;

5

> > a database server for searching and updating the database;
> >
> > a database management terminal for managing the database; and
> >
> > a central processing controller;
>
> the database comprising:
>
> > a program data database including a timetable for recording data of the broadcasting schedule for TV programs, a subject matter table for storing program guide data, and data including the number of prior searches having the same TV program data;
>
> a user database including:
>
> > a user table for recording user registration data of users searching the TV program data, wherein the user registration data includes at least one of the user's sex, age or occupation;
>
> the central processing controller comprising:
>
> > a program data recorder that includes a broadcasting schedule recorder for receiving entry requirements from the broadcasting station terminals and recording broadcasting schedule data in the timetable and a subject matter recorder for recording program guide data in the subject matter table;
> >
> > a user register for receiving requirements from user terminals and recording said user registration data in the user table;
> >
> > a program data searcher for receiving requirements from the user terminals and from the user register and searching for broadcasting schedule data, program guide data recorded in the program data database, and data including the number of prior searches having the same TV program data;
>
> wherein the program data searcher provides the user with data related to searches that other users have performed on the TV program data.

('088 patent at 10:6–58).

The only other independent claim is claim 1, which is substantially similar to claim 6 but also includes "a usage fees table for recording usage data of the users," "a tabulation usage fees recorder," and additional details about the "recorder." ('088 patent at 8:42–9:39). Defendants

argue that all the dependent claims "merely limit the use of the abstract idea to a particular technological environment or content." (D.I. 13 at 15).

Plaintiff generally argues that Defendants did not meet their burden to show that claim 6 is representative, then specifically argues that claim 6 is not representative of claim 13. (D.I. 18 at 13–14).

"Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Defendants bear the initial burden to show the claims are "substantially similar and linked to the same ineligible concept," then the burden shifts to Plaintiff "to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all the claims." *Mobile Acuity*, 110 F.4th at 1290 (internal quotations and citations omitted).

Defendants have met their burden to show the claims are substantially similar and linked to the same purported patent-ineligible concept. Defendants allege that claim 6 is directed to the abstract idea of "collecting and searching TV program data and providing data based on past searches." (D.I. 13 at 1). The dependent claims specify what sort of data the patented system searches for, and what sort of data is displayed to the user. (*See, e.g.,* '088 patent at 9:40–61). The other independent claim includes additional data; that is, data about usage and usage fees.

(*Id.* at 8:42–9:39). The claims are thus "substantially similar and linked to the same abstract idea" that Defendants argue is the defect of claim 6. *Mobile Acuity*, 110 F.4th at 1290. I note that Plaintiff offers no specific or meaningful argument for the distinctiveness of claims 1–5 and 7–12, which weighs in favor of me treating claim 6 as representative of those claims. *See Berkheimer*, 881 F.3d at 1365.

As for claim 13, Plaintiff argues the claim recites searching "TV program data to find programs of interest prior to broadcast of the TV program," which solved a problem in the prior art. (D.I. 18 at 14). This is data searching, the crux of Defendants' patent-ineligibility arguments. Plaintiff offers no meaningful argument to show that claim 6 should not be considered representative of claim 13. I will treat claim 6 as representative of all the '088 patent claims.

### B. Patent Eligibility

#### 1. Step One

Defendants argue the '088 patent claims are invalid because they are directed to the abstract idea of "collecting and searching TV program data and providing data based on past searches." (D.I. 13 at 1). Defendants analogize to the Federal Circuit case *Broadband*.

In *Broadband*, one of the claims at issue recited, "A method for dynamic adjustment of an individualized program guide where the adjustment is based at least in part on individual viewer consumption," which included, at least in part, "maintaining . . . an electronic program guide database comprising electronic program guide data, and a usage history database comprising a log of selection data corresponding to the viewer's consumption of the . . . programs" and "generat[ing] . . . viewer-individualized electronic program guides." *Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359, 1364–65 (Fed. Cir. 2024). The court held that

8

the claim was "directed to the abstract idea of collecting and using viewing history data to recommend categories of video content." *Id.* at 1371. I think the claims at issue here are very similar. Claim 6 is directed to "[a] system for searching TV program data" with "a data management apparatus" that maintains data on "the number of prior searches" of TV programs, "a user data database" that maintains data on the users that search for those TV programs, and a "program data searcher" that "provides [a] user with data related to searches that other users have performed on the TV program data." ('088 patent at 10:6–58). In other words, claim 6 is directed to receiving data about a number of users (their previous TV program searches), and providing that data to a user. That is very similar to the abstract idea "of collecting and using viewing history data to recommend categories of video content." *Broadband*, 113 F.4th at 1368.

Plaintiff argues that Defendants' characterization of claim 6 oversimplifies the patent by reading out the patent's key invention of "storing and searching the number of prior searches for a particular TV program." (D.I. 18 at 6). Plaintiff argues "the number of prior searches" is not mere "providing data on past searches," and that Defendants collapse the claimed "searching for" and "providing for" into one abstraction of "providing data based on past searches." (*Id.* at 6–7). Even if true, the number of prior searches is data on those prior searches. Searching, analyzing, storing, and manipulating data are all abstract ideas. *See Finnavations LLC v. Payoneer, Inc.*, 2018 WL 6168616, at *3 (D. Del. Nov. 26, 2018) (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016)).

Plaintiff attempts to distinguish *Broadband* with two arguments. First, Plaintiff argues the '088 patent overcame prior art rejections at the Patent Office. But patent eligibility under § 101 is a separate inquiry from anticipation under § 102 or obviousness under § 103. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for

9

a *new* abstract idea is still an abstract idea. The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty."). Second, Plaintiff argues that "the number of prior searches" in claim 6 is different from "usage history" in the invalidated claims of *Broadband*. (D.I. 18 at 7). The two are indeed different. One is search history and one is usage history. But both are data used to recommend content.

Plaintiff briefly argues its claims are similar to the claims found to be patent-eligible in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018). There, the Federal Circuit held that claims directed to "improved display interfaces, particularly for electronic devices with small screens like mobile telephones" were patent-eligible under § 101. *Id.* at 1359, 1363. Notably, the claims at issue were "directed to an improvement in the functioning of computers, particularly those with small screens." *Id.* at 1363. Plaintiff does not analogize its patent to argue its claimed invention improves the functioning of a TV. Plaintiff instead argues the case is similar because "the '088 [p]atent's claims recite a specific technique for identifying programs of interest that solved a problem in the prior art circa the year 2000." (D.I. 18 at 8). Perhaps the claims do solve a problem, but that does not mean they are patent-eligible under § 101. *See Synopsys*, 839 F.3d at 1151.

Plaintiff argues that the '088 patent claims are "directed to a technological solution to the problem of gauging viewers' interest in TV programs based on a novel use of a specific type of Internet search data." (D.I. 18 at 9). I do not think that is a solution to a technical problem. It seems to be a solution to an advertising problem. Plaintiff later argues that the '088 patent claims are directed to "the use of a computer-implemented function (i.e., searching the number of prior searches for a particular TV program in order to gauge viewer interest [in] future programs) to improve the capability of the system as a whole over traditional systems." (D.I. 18

10

at 10). Again, this may be true, but it is a non-technical solution to a non-technical problem. A new abstract idea is still an abstract idea. *Synopsys*, 839 F.3d at 1151.

"[C]laims reciting generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas." *Mobile Acuity*, 110 F.4th at 1293. Claim 6 is directed to collecting data and using that data to show a user a TV program, using generic computer components.[1] Claim 6 is directed to the abstract idea of collecting and searching TV program data and providing data based on past searches.

### 2. Step Two

Defendants argue the '088 patent claims recite no inventive concept and include generic computer components. (D.I. 13 at 2). Plaintiff argues "using 'the number of prior searches' to find TV programs of interest" recited in claim 6 is an inventive concept, citing the patent's prosecution history and improvements over the prior art. (D.I. 18 at 11).

To be patent-eligible under step two, the purported "inventive concept" must be more than the abstract idea itself. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019). I think "the number of prior searches having the same TV program data" is directed to the abstract idea itself. Even if it is non-conventional like Plaintiff alleges (D.I. 18 at 13), "the

---

[1] Defendants argue all the technical components in claim 6 are conventional and generic. (D.I. 13 at 5). Plaintiff makes no arguments to the contrary but argues, with respect to *Alice* step two, that the components combined are non-conventional. For purposes of *Alice* step one, I think the computer components are generic. The technical components of claim 6 are things like "the Internet," "terminals," "data management apparatus," "communication connection controller," "web server," and "central processing unit." ('088 patent at 10:6–58). These are generic computer components that do not render the claims non-abstract. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (collecting cases); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023).

11

number of prior searches" is still just data. Collecting, displaying, and manipulating data is an abstract idea. *See Mobile Acuity*, 110 F.4th at 1293; *Broadband*, 113 F.4th at 1370.

Plaintiff argues that there is at least a factual dispute on whether using "the number of prior searches having the same TV program data" was well-understood, routine, or conventional at the time of invention. (D.I. 18 at 12). Even if there is a factual dispute, as explained above, "the number of prior searches" is itself directed to an abstract idea. A new abstract idea is still an abstract idea, and it is still not patent-eligible. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018).

Plaintiff argues that, even if its claimed elements are individually conventional, they are non-conventional in an ordered combination. (D.I. 18 at 13). Plaintiff does not explain how exactly the elements are arranged in a non-conventional way, or how the arrangement results in an inventive concept. Plaintiff repeats its argument that the claims improve searching for and displaying TV programs (*id.*), but as I explained above, that itself is directed to an abstract idea.

For the foregoing reasons, the '088 patent claims do not recite an inventive concept under *Alice* step two to render the claims patent-eligible.

## IV. CONCLUSION

Defendants' motion (D.I. 12) is GRANTED. An appropriate order will issue.